# In the United States Court of Federal Claims

| | |
|---|---|
| SHERRILL COTE,<br><br>Petitioner,<br><br>v.<br><br>THE UNITED STATES,<br><br>Respondent. | No. 18-1350<br>Filed under seal: August 6, 2026<br>Reissued: August 24, 2026 |

Richard Gage, Richard Gage P.C., Cheyenne, WY, for petitioner.
Nathaniel Trager, Civil Division, United States Department of Justice, Washington, DC, for respondent.

**OPINION AND ORDER**
**Denying Ms. Cote's motion for review**

Sherrill Cote filed a petition under the National Childhood Vaccine Injury Act of 1986, seeking compensation for rheumatoid arthritis that she alleges resulted from a hepatitis B or flu vaccination.[1] The special master determined that Ms. Cote was not entitled to compensation, and Ms. Cote appeals. Ms. Cote argues that the special master wrongly (1) required her to prove with scientific certainty that the hepatitis B or flu vaccines can cause rheumatoid arthritis, impermissibly raising the burden of proof; and (2) accepted Ms. Cote's history of smoking and an upper respiratory infection as alternative causes of her rheumatoid arthritis in violation of 42 U.S.C. § 300aa-13(a)(2)(A).

The special master's decision was not arbitrary, capricious, or an abuse of discretion. He considered the evidence, made plausible inferences, and articulated his reasoning. The court therefore will deny Ms. Cote's motion for review and affirm the special master's decision.

[1] This opinion was originally issued under seal on August 6, 2026. The parties had no proposed redactions. The court reissues the opinion publicly.

## I. Background

### A. Ms. Cote's medical history

On May 10, 2016, Ms. Cote, at fifty-five years old, received hepatitis B and flu vaccines during a physical exam at an urgent care center in New Hampshire. ECF No. 8-2 at 6-7. Within a few days of vaccination, Ms. Cote began experiencing pain and swelling in her joints. ECF No. 11 at 1 [¶3]. She also reported a three-week history of cold symptoms, including headaches, chills, sweats, chest pain, cough, and sore throat. ECF No. 8-1 at 3.

One month later, in June 2016, Ms. Cote went to urgent care for a workers' compensation evaluation, reporting a three-day history of joint pain that she believed was potentially work related. ECF No. 8-2 at 9-11. The treating physician diagnosed Ms. Cote with unspecified joint pain and referred her to rheumatology for further evaluation. *Id.* Three days later, Ms. Cote visited her primary care providers complaining of neck and back pain and "intermittent joint pain in shoulder joints, elbows, wrists, hips, knees, and ankles." ECF No. 8-1 at 8. Dr. Toller Wilson reaffirmed the diagnosis of unspecified joint pain. *Id.* Dr. Wilson was "unable to find any clear indication of a specific injury" (*id.*), but the next day Dr. Wilson's physician's assistant suggested that Ms. Cote's symptoms could have been related to "overuse [or] some sort of inflammatory process" (*id.* at 14).

Lab testing ordered by Ms. Cote's primary care team showed a positive rheumatoid factor. ECF No. 8-1 at 21. The record notes that a positive rheumatoid factor is "not diagnostic for rheumatoid but makes the [diagnosis] a possibility." *Id.* After reviewing the results, the physician's assistant stated that Ms. Cote "could have rheumatoid arthritis." *Id.* at 17.

One month later, Ms. Cote returned to her primary care providers, who, after noting her lab results, assessed, "Most likely new diagnosis of rheumatoid arthritis." ECF No. 8-1 at 29-32.

Two months later, Dr. Todd Daugherty, Ms. Cote's rheumatologist, affirmed that Ms. Cote suffered from "[s]evere new onset rheumatoid arthritis." *Id.* at 42.

Ms. Cote then had approximately two dozen medical appointments between June 2016 and June 2024, receiving treatment from primary care providers, emergency room physicians, lab technicians, and rheumatologists Dr. Daugherty and Dr. Yan Li. *See generally* ECF Nos. 8-1, 8-3, 27-1, 27-2, 69-1 (Ms. Cote's medical records detailing her physician visits). In that eight-year span, no treating physician opined in Ms. Cote's medical records that the hepatitis B or flu vaccinations Ms. Cote received on May 10, 2016, caused her rheumatoid arthritis. *See* ECF No. 70 at 39-40 (special master concluding that "based on [his] review of the medical records, there is no treating physician support for petitioner's claim").

Around the time of the vaccinations, Ms. Cote was described as a "[l]ight tobacco smoker—less than 1/2 a pack per day" (ECF No. 8-1 at 3), but later records characterized her as smoking one pack a day (*see, e.g.*, *id.* at 40). Ms. Cote's treating physicians repeatedly identified her more-than-twenty-year smoking history as a relevant risk factor in the treatment of her rheumatoid arthritis. For example, Ms. Cote's primary care physician, Dr. Wilson, documented her daily smoking and "discuss[ed] the necessity for her to stop smoking particularly given her current complaints [of rheumatoid arthritis]." *Id.* at 26. Ms. Cote's rheumatologist, Dr. Daugherty, repeatedly advised her to quit smoking, noting that smoking reduced the effectiveness of her rheumatoid arthritis medications and was "a risk factor for [her] rheumatoid arthritis." *Id.* at 55; *see id.* at 4, 40; ECF No. 27-1 at 4-8, 23; ECF No. 27-2 at 1, 4-5, 11, 16-17. Ms. Cote's treating rheumatologist Dr. Li also noted her smoking history. *See* ECF No. 69-1 at 31. Over the course of eight years, Ms. Cote's physicians repeatedly noted that quitting smoking was "an essential part of her treatment plan," and that "smoking [is] an inflammatory trigger." ECF No. 27-2 at 11; *e.g.*, *id.* at 1, 4-5; *id.*

at 16 (referencing Dr. Daugherty's statement that "at each visit we strongly encouraged [Ms. Cote] to quit smoking since this could have dramatic impact on her response to therapy").

Ms. Cote's medical records also document her history of upper respiratory infections shortly before the onset of rheumatoid arthritis symptoms, including the infection noted above just before the vaccinations (ECF No. 8-1 at 3). *See, e.g.*, ECF No. 27-1 at 1, 18, 20-21; ECF No. 27-2 at 8.

**B. Procedural Background**

In 2018, Ms. Cote filed a petition with the Office of Special Masters in this court alleging that she suffers from rheumatoid arthritis caused by the hepatitis B or flu vaccinations she received on May 10, 2016. ECF Nos. 1, 11-1. She alleged that she continues to experience symptoms associated with rheumatoid arthritis, for which she is still being treated. ECF No. 11-1 at 1 [¶ 5].

Ms. Cote retained Eric Gershwin, MD, a rheumatologist and immunologist, and Omid Akbari, Ph.D., an immunology expert, as expert witnesses. *See* ECF Nos. 33-1, 37-1, 49-1, 59-1. Dr. Gershwin submitted two expert reports concluding that the hepatitis B vaccine Ms. Cote received on May 10, 2016, caused her rheumatoid arthritis. *See* ECF Nos. 33-1, 37-1. Dr. Akbari submitted two expert reports concluding that Ms. Cote developed rheumatoid arthritis because of the May 10, 2016, hepatitis B or flu vaccines. *See* ECF Nos. 49-1, 59-1. Drs. Gershwin and Akbari presented multiple mechanisms by which the hepatitis B or flu vaccines might cause rheumatoid arthritis. *E.g.*, ECF Nos. 33-1, 37-1, 49-1, 59-1.

The government responded with three expert reports from rheumatologist Christopher Mecoli, MD (ECF Nos. 36-1, 38, 55-1), and two expert reports from immunology expert John Bates, Ph.D. (ECF Nos. 55-3, 66-1). Drs. Mecoli and Bates criticized Dr. Akbari's theory, arguing that neither peer-reviewed scientific literature nor Ms. Cote's clinical history "documented in her medical records" supported Dr. Akbari's proposed mechanism. ECF No. 55-3 at 11. They likewise

opined that Dr. Gershwin's reliance on "a temporal association alone" was insufficient to "support a causal relationship." ECF No. 36-1 at 5.

The special master denied Ms. Cote's petition for relief. ECF No. 70 (publicly available at ECF No. 77). Relying on the government's expert testimony, the special master concluded that the theories advanced by Drs. Gershwin and Akbari were "not persuasive on the whole." *Id.* at 37. The special master noted that Ms. Cote was relying on a theory called challenge-rechallenge to show causation. *Id.* at 27, 29-30. The special master acknowledged that challenge-rechallenge is a recognized scientific concept but found that neither expert actually relied on a rechallenge theory and that the concept did not fit Ms. Cote's clinical history. *Id.* He further concluded that Ms. Cote failed to establish causation through the experts' molecular mimicry theories. *Id.* at 30-32.

The special master also concluded that Ms. Cote's experts failed to establish a reliable medical theory satisfying the preponderance-of-the-evidence standard. ECF No. 70 at 36. The special master therefore concluded that Ms. Cote failed to demonstrate that the hepatitis B or flu vaccines "likely can cause" rheumatoid arthritis. *Id.* at 38.

Ms. Cote timely sought review of the special master's decision in this court. ECF No. 71.

## II. Discussion

This court has jurisdiction to review a special master's decision under the Vaccine Act. *See* 42 U.S.C. § 300aa-12(e). On a motion for review, this court may uphold or set aside the special master's findings of fact and conclusions of law or remand the petition to the special master for further action. *Id.*; Rules of the Court of Federal Claims, Appendix B, Vaccine Rule 27.

This court reviews the decision of a special master to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa-12(e)(2)(B); Vaccine Rule 27. That standard is "well understood to be the most deferential possible." *Munn v. Secretary of Health and Human Services*, 970 F.2d 863, 870 (Fed. Cir. 1992).

"If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *White v. Secretary of Health and Human Services*, 153 F.4th 1214, 1220 (Fed. Cir. 2025) (quotation marks omitted). This court does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses[;] these are all matters within the purview of the fact finder." *Porter v. Secretary of Health and Human Services*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *see Munn*, 970 F.2d at 871-72 (explaining that the Federal Circuit and this court apply the same standard). The court will uphold a factual determination unless the evidence cannot reasonably be interpreted in a way that supports the determination. *See Shoes by Firebug LLC v. Stride Rite Children's Group, LLC*, 962 F.3d 1362, 1371 (Fed. Cir. 2020) (explaining that, when the lower tribunal was presented with two alternative theories, the reviewing court's "task is not to determine which theory [it] find[s] more compelling" or "to second-guess the [tribunal's] assessment of the evidence" (marks omitted)). Even when the court may have reached a different conclusion had it reviewed the evidence independently, it will not disturb the special master's reasonable evaluation of the record.

The court gives "no deference to the … Special Master's determinations of law," reviewing legal questions de novo. *Carson ex rel. Carson v. Secretary of Health and Human Services*, 727 F.3d 1365, 1368 (Fed. Cir. 2013).

The Vaccine Act provides two avenues for establishing causation, and thus, entitlement to compensation. For so-called table injuries, causation is presumed once the petitioner demonstrates that an injury listed in the statutory vaccine injury table manifested within the listed time after administration of a covered vaccine. *See* 42 U.S.C. § 300aa-14(a) (vaccine injury table); *see also*

42 U.S.C. § 300aa-11(c)(1)(C)(i) (listing table injuries); *Hines v. Secretary of Health and Human Services*, 940 F.2d 1518, 1524 (Fed. Cir. 1991). For off-table injuries—injuries that are not listed on the table or that occurred outside the specified timeframe—the petitioner bears the burden of proving actual causation under the three-prong test set forth in *Althen v. Secretary of Health and Human Services*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

Because rheumatoid arthritis is an off-table injury, Ms. Cote must establish actual causation under *Althen*. She must show, by a preponderance of the evidence, "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) … a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278; *see Boatmon v. Secretary of Health and Human Services*, 941 F.3d 1351, 1355 (Fed. Cir. 2019) (discussing the preponderance-of-the-evidence standard). If Ms. Cote establishes a prima facie case, the burden shifts to the government to "establish[] alternative causation by a preponderance of evidence." *Cedillo v. Secretary of Health and Human Services*, 617 F.3d 1328, 1335 (Fed. Cir. 2010).

### A. The special master reasonably concluded that Ms. Cote failed to establish a reliable medical theory connecting the vaccines to rheumatoid arthritis

Ms. Cote argues that the special master erred in concluding that she failed to satisfy *Althen* prong one. *See* ECF Nos. 71, 71-1 at 1. Ms. Cote argues that the special master improperly discounted her experts' opinions and supporting medical literature, misapplied *Capizzano v. Secretary of Health and Human Services*, 440 F.3d 1317 (Fed. Cir. 2006), and effectively required scientific certainty rather than the logical and legally probable medical theory required under the Vaccine Act. *See* ECF No. 71-1 at 8.

To satisfy *Althen* prong one, a petitioner must present a "reputable medical theory" showing that the vaccine at issue can cause the alleged injury. *Pafford v. Secretary of Health and Human*

*Services*, 451 F.3d 1352, 1355 (Fed. Cir. 2006) (quotation marks omitted). Although that medical theory "does not require medical or scientific certainty, it must still be sound and reliable." *Boatmon*, 941 F.3d at 1359 (quotation marks omitted). In evaluating competing medical theories, a special master "has discretion to determine the relative weight to give evidence in the record" but must provide "logical reasoning for finding certain articles unreliable." *K.L. v. Secretary of Health and Human Services*, 134 Fed. Cl. 579, 607 (2017). Likewise, a special master is not "precluded from inquiring into the reliability of testimony from expert witnesses." *Moberly v. Secretary of Health and Human Services*, 592 F.3d 1315, 1325 (Fed. Cir. 2010).

Here, the special master considered at length the opinions of Drs. Gershwin and Akbari and the medical literature they relied on. *See* ECF No. 70 at 26-38. After evaluating that evidence, the special master concluded that Ms. Cote "has not met her burden under *Althen* prong one of showing by preponderant evidence that the flu or hepatitis B vaccine can cause [rheumatoid arthritis]." *Id.* at 38.

Ms. Cote argues that the special master improperly discounted challenge-rechallenge evidence discussed in *Capizzano*, 440 F.3d at 1322. A challenge event refers to the onset or worsening of symptoms following the first administration of a vaccine. *See* ECF No. 70 at 29-30. A "rechallenge event occurs when a patient who had an adverse reaction to a vaccine suffers worsened symptoms after an additional injection of the vaccine." *Capizzano*, 440 F.3d at 1322. Because rechallenge shows that an adverse event following repeated exposure is reproducible, it may support a finding of causation. *Id.* ("[E]vidence of rechallenge constituted such strong proof of causality that it is unnecessary to determine the mechanism of cause—it is understood to be occurring." (cleaned up)). But Ms. Cote's case is not one of rechallenge, as Ms. Cote failed to return for

the remaining doses in her hepatitis B three-part vaccination (ECF No. 8-2 at 6-7) and does not allege that she experienced rechallenge (ECF Nos. 1, 11).

Ms. Cote submitted, and her experts discussed, a retrospective study discussing challenge-rechallenge evidence and several published reports describing a temporal relationship between the hepatitis B vaccine and rheumatoid arthritis. *See* ECF No. 50-11 (repeated at ECF No. 60-5, citing J. Sibilia & J. F. Maillefert, *Vaccination and Rheumatoid Arthritis*, 61 Annals Rheumatic Diseases 575 (2002)); *see also* ECF Nos. 49-52, 59, 60 (citing additional articles and case reports submitted by Ms. Cote's experts). The same literature, however, also observed that the reported cases did not constitute strong evidence of causation and acknowledged that epidemiologic studies and large-scale hepatitis B vaccination programs had failed to demonstrate a statistically significant association between the hepatitis B vaccine and rheumatoid arthritis. *See* ECF No. 70 at 32.

In addressing Ms. Cote's evidence, the special master acknowledged the Federal Circuit's decision in *Capizzano*, which addressed rheumatoid arthritis from the hepatitis B vaccine. He stated that "neither the *Capizzano* special master's nor the Federal Circuit's causal analyses are binding." ECF No. 70 at 27. Of course, the Federal Circuit's causal analyses cannot be disregarded. The Federal Circuit recently described being "troubled by inconsistent findings on identical facts by different special masters." *Gamboa-Avila v. Secretary of Health and Human Services*, 166 F.4th 1318, 1323 (Fed. Cir. 2026). But here the special master relied on different circumstances distinguishing this case from *Capizzano*. *See* ECF No. 70 at 27 (noting that "[c]ausation in fact under the Vaccine Act is … based on the circumstances of the particular case" (quotation marks omitted)).

In *Capizzano*, 440 F.3d at 1324-26, four treating physicians diagnosed Ms. Capizzano with vaccine-related rheumatoid arthritis. The issue before the Federal Circuit was not whether challenge-rechallenge literature established that the hepatitis B vaccine can cause rheumatoid arthritis, but whether the special master erred by requiring Ms. Capizzano to present one of only four types of evidence to establish causation: "epidemiological studies; rechallenge; the presence of pathological markers or genetic disposition; or general acceptance in the scientific or medical communities." *Id.* at 1322. The Federal Circuit reversed because requiring a particular type of evidence was inconsistent with the "use of circumstantial evidence envisioned by the preponderance standard." *Id*. at 1325. The Federal Circuit remanded for consideration of Ms. Capizzano's complete evidentiary record, including physician diagnoses, medical records, her affidavit, the absence of unrelated factors, and vaccine adverse event reporting system data. *See id*. Thus, while *Capizzano* discussed rechallenge evidence, it neither held that such evidence is dispositive nor established that the hepatitis B vaccine causes rheumatoid arthritis. *See id*. at 1327-28.

The evidentiary record here is materially different. Unlike in *Capizzano*, none of Ms. Cote's treating physicians attributed her rheumatoid arthritis to either her hepatitis B or her flu vaccination. *See* ECF No. 70 at 39-40 (citing ECF No. 48 at 32; ECF No. 8-1 at 39). Moreover, as the special master explained, medical literature, "post-dating *Capizzano*, further undermines [Ms. Cote's] showing." *Id.* at 28; *see also* ECF No. 36-1 at 6 (discussing the World Health Organization Global Advisory Committee on Vaccine Safety's 2007 review of the literature; concluding, "based on a review of the limited data available, that there was no convincing evidence to support an association between" the hepatitis B vaccine and rheumatoid arthritis; and stating that "follow-up studies in 2010-2011 … confirm this lack of association"). The special master also observed that neither Dr. Gershwin nor Dr. Akbari discussed challenge-rechallenge evidence in their expert

opinions. *See* ECF No. 70 at 30 (citing ECF Nos. 33-1, 37-1, 49-1). Thus, although *Capizzano's* analysis may not be disregarded, the materially different evidentiary record and intervening medical literature support the special master's conclusion that this case warrants a different result.

The special master, likewise, reasonably evaluated the remaining medical literature on which Ms. Cote relied and reasonably concluded that it did not provide a sound medical theory. *See* ECF No. 70 at 38 ("Drs. Gershwin and Akbari … have not preponderantly supported the notion that [their] discussions can be combined to demonstrate that either of the vaccines at issue in this case would have any meaningful effect on the pathophysiology leading to [rheumatoid arthritis]."); *see also id.* at 26-38.

Addressing case reports, the special master recognized that they have evidentiary value, but he found that many of those presented by Ms. Cote involved vaccines other than the single-dose hepatitis B or flu vaccines at issue here and therefore had limited relevance. *Id*. at 36-37. Regarding the other case reports (*see* ECF Nos. 50-7, 50-8, 50-9, 51-2), the special master concluded that they were "not entirely without evidentiary value, [but] not strong evidence without more," because they did not establish a clear causal relationship and involved statistically insignificant cohorts. *See* ECF No. 70 at 36-37.

The special master credited later epidemiological studies, including a large case-control study, that found no association between the hepatitis B or flu vaccines and rheumatoid arthritis. ECF No. 70 at 36-37 (citing ECF Nos. 36-3, 36-5). He also noted that one of the epidemiological studies submitted by Ms. Cote "found no statistically significant association between exposure to hepatitis B vaccine and onset of [rheumatoid arthritis]" and found that "a possible association between [rheumatoid arthritis] and influenza vaccination … was not borne out in the larger case-control analysis." *Id.* at 36 (citing ECF No. 50-9). Reasonable minds may disagree on whether,

despite some factual differences, the medical literature supports Ms. Cote's theory. But it is not unreasonable to find that factual distinctions between the cases described and Ms. Cote's circumstances limit the value of that medical literature. *See Lampe v. Secretary of Health and Human Services*, 219 F.3d 1357, 1365 (Fed. Cir. 2000) (explaining that, for a study to be instructive, "its conclusions must fit the facts of the case under consideration").

Ms. Cote argues that the absence of statistical significance does not render those studies devoid of evidentiary value. *See* ECF No. 71-1 at 22-24. But it was not arbitrary or capricious for the special master to determine, based on the authors' own stated conclusions and the broader body of medical literature, that the studies did not establish a sound and reliable medical theory under *Althen* prong one. Although the special master "considered that the concepts raised by [Ms. Cote's] experts could collectively represent a whole greater than the sum of its parts," he concluded that they did not in this case and thus were unpersuasive. ECF No. 70 at 37.

The special master also did not impose an improper requirement that Ms. Cote identify a specific biological mechanism. Ms. Cote argues that the special master improperly rejected her molecular mimicry theory for lacking an explanation of a detailed mechanism. *See* ECF No. 71-1 at 18-21. But the special master expressly acknowledged that Ms. Cote was not required to prove a specific biological mechanism to satisfy *Althen* prong one. ECF No. 70 at 3, 26, 29, 36; *see also Capizzano*, 440 F.3d at 1325. Rather, the special master found that the evidence supporting molecular mimicry was "lacking any explication of the concept or any other evidence to support its applicability." ECF No. 70 at 31. Ms. Cote's experts' failure to substantiate or explain their theories essentially undermined their credibility. *See id.* at 37 ("Drs. Gershwin and Akbari are not persuasive on the whole"); *id.* at 29 (discussing "the reliability of testimony from expert witnesses" (quotation marks omitted)). Credibility determinations of that kind are matters "within the purview

of the fact finder." *See Porter*, 663 F.3d at 1249. While the special master considered whether the biological mechanisms proposed by Drs. Gershwin and Akbari collectively could support causation, he ultimately found that they did not establish, by a preponderance of the evidence, a persuasive medical theory linking either vaccine to rheumatoid arthritis. ECF No. 70 at 37.

The special master considered the relevant evidence, explained why he found the opinions of Drs. Gershwin and Akbari unpersuasive, drew plausible inferences from the record, and articulated a rational basis for concluding that Ms. Cote failed to satisfy *Althen* prong one. ECF No. 70 at 26-38. Ms. Cote has failed to establish that those determinations were arbitrary, capricious, or an abuse of discretion. *See Hines*, 940 F.2d at 1528 ("[I]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate."); *White*, 153 F.4th at 1220.

**B. The special master reasonably considered Ms. Cote's smoking history and upper respiratory infection as alternative possible causes that undermined the logical sequence and timing of her claimed injury**

Ms. Cote also argues that the special master misapplied *Althen* prong two, requiring a logical sequence of cause and effect. ECF No. 71-1 at 24. Ms. Cote asserts that the special master should not have relied on her smoking history and upper respiratory infection as alternative causes of her rheumatoid arthritis. *Id.* at 24-25. According to Ms. Cote, the special master effectively accepted an impermissible "factor unrelated" defense in violation of 42 U.S.C. § 300aa-13(a)(2)(A). ECF No. 71-1 at 24.

For an off-table injury, a petitioner not only must establish that the vaccine can cause the alleged injury but also must show "a logical sequence of cause and effect showing that the vaccination was the reason for the injury." *Althen*, 418 F.3d at 1278 (quotation marks omitted). The petitioner bears the burden of proving each *Althen* prong by a preponderance of the evidence. *See Boatmon*, 941 F.3d at 1355. While a "petitioner is not required to eliminate other potential

causes in order to be entitled to compensation …, evidence of other possible sources of injury can be relevant to whether a prima facie showing has been made that the vaccine was a substantial factor in causing the injury in question." *Winkler v. Secretary of Health and Human Services*, 88 F.4th 958, 962-63 (Fed. Cir. 2023) (cleaned up).

Only after a petitioner establishes a prima facie case does the burden shift to the government to prove, by a preponderance of the evidence, that the alleged injury was caused by "factors unrelated to the administration of the vaccine described in the petition." 42 U.S.C. § 300aa-13(a)(1)(B); *see Capizzano*, 440 F.3d at 1327; *see also Cedillo*, 617 F.3d at 1335 (explaining that the government bears the burden of establishing alternative causation by a preponderance of the evidence only after the petitioner has established a prima facie case).

The special master reasonably considered (ECF No. 70 at 38-41) Ms. Cote's history of smoking and respiratory infection as part of the threshold inquiry into whether Ms. Cote had established the causal sequence required under *Althen* prong two. As the special master explained, although Ms. Cote "is not obligated to rule out other causes of her condition," "the presence of other possible sources of injury can still be relevant to the determination of whether petitioner has met her prima facie burden of proof." *Id.* at 41. The Federal Circuit has recognized that a petitioner may fail to satisfy *Althen's* second prong when "another cause prevents the claimant from proving that the vaccine caused the injury by preponderant evidence." *Capizzano*, 440 F.3d at 1327; *see also Cerrone v. Secretary of Health and Human Services*, 146 F.4th 1113, 1122 (Fed. Cir. 2025).

The record shows that Ms. Cote's history of smoking and respiratory infection were not speculative explanations the special master considered. Ms. Cote's own experts identified smoking as one of the factors relevant to the development of rheumatoid arthritis, and they likewise discussed the role of inflammatory responses associated with infection. *See* ECF No. 49-1 at 17-18

(citing ECF Nos. 51-5, 51-6, 51-7); ECF No. 33-1 at 6. And none of Ms. Cote's treating physicians attributed her rheumatoid arthritis to her hepatitis B or flu vaccinations. *See* ECF No. 70 at 39-40. They instead repeatedly discussed her smoking as a contributing factor to her rheumatoid arthritis. *See, e.g.*, ECF No. 8-1 at 3, 4, 26, 40, 55; ECF No. 27-1 at 4-8, 23; ECF No. 27-2 at 1, 4-5, 11, 16-17. The special master therefore reasonably considered those same facts when evaluating whether Ms. Cote's vaccinations, versus her other documented risk factors, more likely than not caused her rheumatoid arthritis. *See* ECF No. 70 at 38-41. As the Federal Circuit observed in *Capizzano*, 440 F.3d at 1327, a petitioner may fail to satisfy *Althen* prong two "when medical records and medical opinions do not suggest that the vaccine caused the injury," including because they suggest there was some other cause.

The special master did not accept an affirmative "factor unrelated" defense. *See* ECF No. 71-1 at 24-25. Nor did he shift the burden to Ms. Cote to disprove alternative causes. *See* ECF No. 70. Instead, he considered the entire medical record, including other documented risk factors, competing expert testimony, and the absence of contemporaneous medical opinions attributing Ms. Cote's rheumatoid arthritis to her May 10, 2016, vaccinations, to determine whether she had met her burden of proving a logical sequence of cause and effect under *Althen* prong two. *Id*. at 38-41.

As with his analysis of prong one, the special master's evaluation of prong two reflects that he considered the relevant evidence of record, drew plausible inferences, and articulated a rational basis for his decision. *See Althen*, 418 F.3d at 1278. The special master's conclusion that Ms. Cote had not established a logical sequence of cause and effect between her vaccinations and her rheumatoid arthritis (ECF No. 70 at 41) was therefore neither arbitrary nor capricious nor an abuse of discretion.

## III. Conclusion

For the reasons stated above, this court **denies** Ms. Cote's motion for review (ECF No. 71) and **affirms** the special master's decision. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge